IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROY B.,[1]

        Plaintiff,    Civ. No. 1:22-cv-00843-MC

v.    **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

        **Defendant.**

_____

MCSHANE, Judge:

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff filed an application for benefits on August 29, 2019, ultimately alleging disability as of July 1, 2018. Tr. 13.[2] After the first hearing, the Administrative Law Judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act (the "Act"). Tr. 13–22. Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony, in finding the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

medical opinion of Scott Ross, PA-C, unpersuasive, and in improperly rejecting lay witness testimony. Because the ALJ erred, and because the record is fully developed and requires a finding that Plaintiff is disabled as of July 1, 2018, the Commissioner's decision is REVERSED and this matter is REMANDED for calculation of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five.

*Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

      The ALJ determined Plaintiff had the following severe impairments: left meralgia paresthesia; mild lumbar spine degenerative disc disease, and mild degenerative joint disease of the right hand. Tr. 15. The ALJ found that Plaintiff had the RFC to perform light work with a limitation to frequently handle and finger with the right hand. Tr. 17.

**I.**    **Subjective Symptom Testimony**

      Plaintiff contends the ALJ erred in discounting his subjective statements about his limitations. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d

at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

At the hearing, Plaintiff testified that he is constantly in pain, that he is unable to engage in too much movement over a long period of time, that he suffers from the side effects of his many medications, such as fatigue and blurred vision, as well as from memory loss. Tr. 51. He

testified that he can only walk for ten or fifteen minutes before he must rest, that he can only sit for fifteen or twenty minutes, and he can comfortably lift or carry up to ten pounds. Tr. 53. Plaintiff also testified that while he can dress and bathe himself independently, he has bars in his shower to hold onto and he has difficulty putting on his socks. Tr. 54. When asked about his daily activities, he testified that he can do some dishes, sweep, or go to the grocery store for a few items, but will have to lie down for part of the day to recover due to pain his left leg. Tr. 54–55. When asked about his need to lie down, he testified to needing to do so up to three times a day for twenty to forty-five minutes at a time. Tr. 55. Even when done in concert with taking gabapentin, it does not relieve his symptoms, but it does help. Tr. 55–56. Plaintiff also testified that along with pain, he also experiences numbness from his left hip to his left knee and has swelling in both extremities from his feet to his knees. Tr. 56. The pain begins as pressure, turns into pain, then escalates. Tr. 57. To alleviate the swelling, Plaintiff testified to taking Lasix and elevating his legs throughout the day. Tr. 57. Plaintiff also testified that if he were in a work setting, he would need to elevate his legs for half of the day. Tr. 57. Plaintiff also experiences back pain he rates as a six or seven out of ten, that the pain gets worse when he has to stoop, crouch, or crawl, and that he gets dizzy when climbing ladders. Tr. 59–60. When asked about his mental health, Plaintiff testified to suffering from insomnia exacerbated by his pain, from anxiety for which he takes Zoloft, and that he would not be able to handle the stress, pressure, or criticism of a work environment. Tr. 60–61. Lastly, Plaintiff testified that he would have difficulty maintaining attention and concentration for even two hours at a time in an eight-hour workday. Tr. 63.

      The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record." Tr. 18. The ALJ discounted Plaintiff's subjective symptom complaints because they conflicted with the objective medical evidence in the record and were inconsistent with his activities of daily living.

  1. **Daily Living**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted Plaintiff's subjective symptom testimony because he "was still able to engage in a variety of activities consistent with light work, and inconsistent with constant pain," such as being "able to drive, shop, and perform some household chores." Tr. 19, citing Tr. 253, 281–87. However, the ALJ did not explain how these activities undermine his testimony, nor how they are consistent with light work. Because the ALJ did not explain her reasoning, this fails to provide a specific, clear and convincing basis upon which to discount Plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

\ \ \ \ \

## 2. Conflicting with Medical Records

The ALJ discounted Plaintiff's subjective symptom testimony based on alleged conflicts with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole basis for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ found that Plaintiff's allegations are inconsistent because "objective findings on examination, in addition to mild or unremarkable findings on testing, during most of the relevant period, have been fairly mild." Tr. 18. An independent review of the record does not support the ALJ's assessment.

Plaintiff first tested positive for left Meralgia Paresthetica in May 2018, before his alleged onset date. Tr. 307. Plaintiff was experiencing burning pain from his left thigh to his knee, aggravated by wearing a toolbelt and climbing ladders, but with no low back pain radiating down his legs and no right-side symptoms. Tr. 307. Plaintiff's nerve conduction testing also returned normal results. Tr. 309, 311. In July 2018, Plaintiff reported constant pain at 3/10, but that pain increases intermittently. Tr. 353. In August 2018, after his alleged onset date, he was diagnosed with persistent hypesthesia that becomes shooting pain and interferes with his sleep, though he denied weakness in his legs and had 5/5 strength in his lower extremities. Tr. 314–15. In December 2018, Plaintiff underwent an independent medical evaluation confirming a left lateral femoral cutaneous nerve neuropathy, resulting in reported pain and numbness from left thigh to knee that are constant. Tr. 335–36. Plaintiff rated the pain a 4/10 on average, but worsened when aggravated with prolonged kneeling, leaning forward, and standing straight. Tr. 332. According to the evaluation, Plaintiff was not capable of returning to his work as a sheet metal worker because there "is usually no such thing as light duty and he needs to avoid constant

standing and kneeling until this has been improved." Tr. 337. The ALJ points to medical records from Plaintiff's medical evaluation through 2019 displaying 5/5 strength, normal range of motion, and normal gait. Tr. 334–35, 507, 512–13, 517, 530, 536. Yet Plaintiff continued testing positive for pain and numbness at these same appointments. Tr. 506–07, 512–13, 517, 527, 536. The ALJ also pointed to Plaintiff receiving a recommendation that he begin looking for work in June 2019. Tr. 18. What the ALJ leaves out, however, is that this recommendation had the following restrictions: only twisting, bending, crawling, kneeling for up to half an hour; standing for two hours at once and four hours total in a day; sitting for up to an hour; and walking up to 1.5 miles. Tr. 516. Plaintiff testified that he has not attempted to look for work since his alleged onset date, and it is questionable whether such work with those limitations exists. Tr. 54.

      The ALJ acknowledged that Plaintiff's condition worsened in February 2020, where testing showed a positive straight leg test on the right side, back pain and tenderness in his lumbosacral spine, moderate back pain with motion, and an antalgic gait. Tr. 468–69. Plaintiff's condition continued to deteriorate and, at an appointment in July 2020, he was seen again for bilateral edema in his feet, which had been ongoing since February, and he again received treatment in the form of a low salt diet, leg elevation above his heart as much as possible during the day, compression hose, diuretics as prescribed, and daily walking. Tr. 540, 542. Plaintiff returned for swelling in January 2021 and received the same treatment recommendations along with a prescription for Lasix. Tr. 548. Records from February and March echo the previous appointments for swelling while adding that gabapentin was no longer as effective as it had been, resulting in greater hip and low back pain. Tr. 551–53, 563–65.

      The ALJ acknowledged Plaintiff's swelling and limited him to light work, "although the claimant's edema so far has been treated with conservative measures." Tr. 18. The ALJ,

however, does not explain how limiting Plaintiff to light work coincides with Plaintiff's treatment to keep his legs elevated above his heart for as much of the day as possible. The ALJ also erroneously misconstrues the record, stating that "leg swelling had only actually been a problem for few months by early 2021." Tr. 19. Records show that Plaintiff's leg swelling had been a problem since February 2020, meaning that Plaintiff's condition had been ongoing for at least a year by early 2021. How a year only equates to a few months in the ALJ's eyes is clearly circumspect. The ALJ further discounted Plaintiff's testimony because records indicate Plaintiff was well-developed and in no acute distress. Tr. 19, citing 318, 469, 542. The ALJ's evidence, however, does not support the ALJ's reasoning. The ALJ relied on a report from June 2018, before the alleged onset date, where Plaintiff saw a doctor for a possible adverse reaction to prior treatment; a report from February 2020 where Plaintiff tested positive for pain in his back and in his straight leg test; and a report from July 2020 where Plaintiff was again positive for pain. Tr. 318, 469, 542.

      Finally, the ALJ indicates Plaintiff is not consistently taking his medication. Tr. 19. The ALJ relies on a single report stating he stopped taking Cymbalta, but was continuing to take all others, and where he was encouraged to continue taking Cymbalta as prescribed. Tr. 552. Plaintiff testified he was still taking Cymbalta at his hearing. Tr. 51–52. Furthermore, a single report of medication noncompliance over three years fails to undercut Plaintiff's testimony.

      Accordingly, because the ALJ glossed over the many reports of chronic pain and impairment, did not take into account escalating pain due to exacerbation which would undoubtedly affect Plaintiff's ability to work, and failed to explain their reasoning for the evidence that was cited, this was not a clear and convincing reason to discount the entirety of Plaintiff's testimony.

## II.     Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the medical opinion of Scott Ross, PA-C. Because Plaintiff filed his application after March 27, 2017, revised regulations regarding the evaluation of medical source opinions apply to his claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised rules provide that the Social Security Administration will evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements.  20 C.F.R. § 416.920c(c)(1)-(5); *see Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Additionally, "[t]he ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security

disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).

The ALJ's decision finding Ross's opinion unpersuasive is not supported by substantial evidence. *See Woods*, 32 F.4th at 787 (noting that under the new regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). The ALJ concluded there was little evidence in the record to support Ross's opinion that Plaintiff could not sit, stand, or walk for more than two hours a day, would need a sit/stand option, would need to take unscheduled breaks, could never lift any amount of weight, could perform no postural activities, and would be off task a significant amount. Tr. 19. Ross based his opinion on Plaintiff's gait abnormality, tenderness to palpation, numbness and tingling in his legs, and leg swelling. Tr. 556. An independent review of the record shows Plaintiff only began having an abnormal gait in February 2020, a year and a half after his alleged onset date. Tr. 469. The only medical evaluation Plaintiff received was in December 2018, and in June 2019 he was given a recommendation that he could return to work with several limitations, including twisting, bending, crawling, kneeling for up to half an hour, standing for two hours at once and four hours total in a day, sitting for up to an hour, and walking up to 1.5 miles. Tr. 335, 353, 516. The December 2018 affirmed Plaintiff's reports of pain below the left anterior superior iliac spine and showed decreased sensation due to left lateral femoral cutaneous nerve neuropathy. Tr. 335. And despite Plaintiff's 5/5 strength on testing, he could not return to his normal work in construction but could do modified work if it was "quite light and limited to where he could sit and stand on a p.r.n. basis." Tr. 335, 337.

While some of Ross's opinion was in line with the previous reports, the ALJ found the medical evaluation for Plaintiff's worker's comp claim and the follow-up appointment with

modified work limitations to be unpersuasive because there were no specific functional limitations, he was not medically stationary after the work-related injury, and records showed Plaintiff had normal gait, full strength, and negative straight leg raising. Tr. 20, citing Tr. 335. The ALJ's assessment, however, is unsupported. Plaintiff's records show that for over three years he has not been medically stationary, and it is questionable as to whether Plaintiff will ever reach that point. Tr. 337. Furthermore, Plaintiff was given specific functional limitations in December 2018 and in July 2019, including a sit/stand option, twisting, bending, crawling, kneeling for half an hour, standing for 2 hours, sitting for more than one hour, walking more than 1.5 miles. Tr. 354. Given that Plaintiff's complaints of pain were confirmed when Plaintiff was evaluated in December 2018, along with the pain being exacerbated by prolonged kneeling, leaning forward, and standing straight, the July 2019 limitations reinforce what was found seven months prior. Tr. 331, 335, 354. As discussed above, Plaintiff continued experiencing pain even with normal gait and full strength and had a positive straight leg test in February 2020. Tr. 469. Oddly enough, the ALJ finds the modified light work limitations imposed in July 2019 to be persuasive, but finds Ross's opinion, which is partially in line with the previous limitations and assessments, unpersuasive. Tr. 20, 527, 557–58. The ALJ, however, does not explain what part of the modified light work limitations she finds persuasive. The ALJ also erroneously found Plaintiff could lift, push, and pull twenty pounds less than one-third of the workday based on the July 2019 assessment, yet the record does not give any indication of how much of the workday this could be done. Tr. 20, citing Tr. 354.

      Due to the lack of explanation, the ALJ's reasoning for finding Ross's medical opinion unpersuasive is unsupported by substantial evidence.

**III.    Lay Witness Testimony**

Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511 (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ ... must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

Plaintiff's wife, friend, and brother-in-law provided third-party statements in support of his disability. Tr. 260, 301, 303. Plaintiff argues the ALJ erred by failing to provide germane reasons for rejecting those lay witness statements.

The statements provided echo Plaintiff's subjective complaints, such as being unable to finish laundry or dishes, being unable to walk for more than twenty minutes, an inability to spend, squat, or stand without pain, trouble sitting and concentrating for long periods, inability to stay in one position for too long, inability to carry heavy objects, and suffering from depression. Tr. 260, 301, 305, 303. The ALJ disregarded these statements for the same inconsistencies as the Plaintiff's subjective symptom testimony, as well as because the witnesses do not "have the requisite medical training as to adequately opine as to the severity of the claimant's symptoms." Tr. 19. The ALJ's reasoning is unsupported for the same reasoning here as it was above when evaluating Plaintiff's subjective symptom testimony. Furthermore, not only does the ALJ blatantly misstate the regulation, and is in fact required to "consider all of the medical and nonmedical evidence," including evidence offered by "family, neighbors, friends, or other persons," but the logic of such a statement does not exist. 20 C.F.R. § 404.1545. If lay witnesses

were required to have medical training, then they would not be lay witnesses. Therefore, the ALJ erred in failing to properly consider the lay witness statements.

IV.     **Remedy**

As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

This is a rare instance where remand for an award of benefits is appropriate. As noted, Plaintiff testified, and medical records indicate, he needed to elevate his feet above his heart much of the day and lie down from anywhere between twenty and forty-five minutes to alleviate his pain. Plaintiff's base level of pain, while moderate, would also be necessarily exacerbated in a work setting. That evidence is supported by Ross's improperly rejected opinion, his treatment notes, and other medical records. Although the Commissioner argues further proceedings are required, the vocational expert testified that someone needing to elevate one's feet above one's

heart for much of the workday, or needing to lie down, would not be able to sustain employment. Tr. 66–67. Plaintiff is therefore disabled under the Act.

## **CONCLUSION**

The decision of the Commissioner is REVERSED and this matter is REMANDED to the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 31st day of October, 2023.

                                                                 /s/ Michael McShane  
                                                                      Michael McShane  
                                                               United States District Judge